**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                              :
JOHN DIAZ,                    :
                              :     Civil Action No.
              Plaintiff,      :     10-3932 (JBS)
                              :
        v.                    :     **O P I N I O N**
                              :
CUMBERLAND COUNTY JAIL,       :
                              :
              Defendant.      :
_____:

**Simandle**, District Judge:

Plaintiff John Diaz, an inmate confined at Camden County Jail, Bridgeton, New Jersey, seeks to bring this action in forma pauperis, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.[1]  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a), and order the Clerk to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

_____

    [1]  It is not immediately clear from the face of Plaintiff's submission whether he is a pretrial detainee or a convicted individual.  Therefore – out of abundance of caution – the Court will presume, for the purpose of screening Plaintiff's allegations, that Plaintiff is a pretrial detainee.

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   **BACKGROUND**

Plaintiff named, as the sole Defendant in this action, the Cumberland County Jail.  See Docket Entry No. 1, at 1, 3. Plaintiff's factual contentions are brief.  He asserts that, on two different days (specifically, on March 25, 2010, and on April 24, 2010), he was housed in cells that had "no running water." See id. at 4 and 5 (repeating the same).  He also asserts that he: (a) "[was] deprived from [his] right to one hour recreation per day"; (b) "[was] denied legal phone calls"; (c) "was denied an opportunity to file a complaint by Internal Affairs"; and (d) "[was] har[]assed by being placed all around the jail in different locations because of bringing these issues to [unspecified persons'] attention."  Id. at 5.  Plaintiff clarifies that he is seeking damages in the amount of $2 million and, in addition, "pay[ment] for all upcoming legal fees regarding this case," in which he proceeds pro se.  Id. at 6.

Plaintiff's complaint arrived accompanied by his cover letter, reading, "To whom it may concern:  Please be advise[d] that upon receiving this 1983 I John Diaz would like your District Court to contact the Daily Journal located at [address] and advise them of this matter so that it could be placed in newspaper and brought to the attention of the public asap."

2

Docket Entry No. 1-2 (underlining in original).  In addition,
Plaintiff submitted numerous exhibits, indicating that:  (a) on
the two days when Plaintiff was allegedly housed at the cell(s)
that had no running water, Plaintiff's placement in those cells
was made in connection with Plaintiff's disciplinary violations,
and the jail officials' initiation of disciplinary proceedings
against him; (b) Plaintiff systemically attempted to file a
criminal complaint against a certain Carmen O'Cruz, apparently on
the grounds of Plaintiff's belief that O'Cruz made "false
charges" that "put [Plaintiff] in jail"; and (c) Plaintiff filed
a grievance asserting that he was not "receiv[ing] legal phone
calls" (rather than being denied an opportunity to place such
calls).  Docket Entry No. 2.  Plaintiff's exhibits indicate that
every submission made to his jail officials included his
directive to "respond back <u>asap</u>" (or to "contact [Plaintiff]
<u>asap</u>").  <u>See</u> <u>id.</u> (underlining in original).

## II.  <u>STANDARD OF REVIEW</u>

     In determining the sufficiency of a complaint, the Court
must be mindful to construe the facts stated in the complaint
liberally in favor of the plaintiff.  <u>See Erickson v. Pardus</u>, 551
U.S. 89 (2007); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>United</u>
<u>States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  Indeed, it is
long established that a court should "accept as true all of the
[factual] allegations in the complaint and reasonable inferences

that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). However, while a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See id.

Addressing the clarifications as to the litigant's pleading requirement stated in the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the courts in this Circuit with detailed and careful guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3. . . . [Indeed, it is not] sufficient to allege mere elements of a cause of action; instead "a complaint must allege

4

facts suggestive of the proscribed conduct."  Id.
Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United
States Supreme Court in its recent decision Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009):

> [In any civil action, t]he pleading standard . . .
> demands more than an unadorned ["]the-defendant-
> unlawfully-harmed-me["] accusation. [Twombly, 550
> U.S.] at 555 . . . .  A pleading that offers "labels
> and conclusions" or "a formulaic recitation of the
> elements of a cause of action will not do." [Id.] at
> 555.  Nor does a complaint suffice if it tenders
> "naked assertion[s]" devoid of "further factual
> enhancement."  Id. at 557. . . .  A claim has facial
> plausibility [only] when the plaintiff pleads factual
> content . . . .  Id. at 556.  [Moreover,] the
> plausibility standard . . . asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> Id.  [Indeed, even w]here a complaint pleads facts
> that are "merely consistent with" a defendant's
> liability, [the so-alleging complaint still] "stops
> short of [showing] plausibility of 'entitlement to
> relief.'"  Id. at 557 (brackets omitted).  [A
> fortiori,] the tenet that a court must accept as true
> all of the allegations contained in a complaint is
> inapplicable to legal conclusions [or to t]hreadbare
> recitals of the elements of a cause of action,
> supported by mere conclusory statements [,i.e., by]
> legal conclusion[s] couched as a factual allegation
> [e.g.,] the plaintiffs' assertion of an unlawful
> agreement [or] that [defendants] adopted a policy
> "'because of,' not merely 'in spite of,' its adverse
> effects upon an identifiable group." . . . .  [W]e do
> not reject these bald allegations on the ground that
> they are unrealistic or nonsensical. . . .  It is the
> conclusory nature of [these] allegations, rather than
> their extravagantly fanciful nature, that disentitles
> them to the presumption of truth. . . .  [Finally,]
> the question [of sufficiency of] pleadings does not
> turn . . . the discovery process.  Twombly, 550 U.S.]
> at 559 . . . .  [The plaintiff] is not entitled to
> discovery [where the complaint alleges any of the
> elements] "generally," [i.e., as] a conclusory

5

allegation [since] Rule 8 does not [allow] pleading
the bare elements of [the] cause of action [and]
affix[ing] the label "general allegation" [in hope to
develop facts through discovery].

<u>Iqbal</u>, 129 S. Ct. at 1949-54.

### III. <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C. §

1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory . . . subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48

(1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

### IV. <u>DISCUSSION</u>

#### A.   CLAIMS AGAINST CUMBERLAND COUNTY JAIL

Here, Plaintiff names, as the sole Defendant in this action,

the Cumberland County Jail, but the jail is not an entity

cognizable as a "person" for the purposes of a § 1983 suit.  <u>See</u>

6

Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989);
Grabow v. Southern State Correctional Facility, 726 F. Supp. 537,
538-39 (D.N.J. 1989); see also Marsden v. Federal BOP, 856 F.
Supp. 832, 836 (S.D.N.Y. 1994).  Therefore, Plaintiff's
allegations against this Defendant must be dismissed, with
prejudice.

Since Plaintiff did not name any other defendant, the
Court's prior finding, technically, concludes this Court's
inquiry, and Plaintiff's Complaint could be dismissed on this
sole ground.  However, being mindful of Plaintiff's status as pro
se litigant, the Court would allow Plaintiff an opportunity to
amend his pleading unless such an amendment would appear to be
futile.  Accordingly, the Court will determine whether an
amendment identifying an individual defendant or defendants who
allegedly perpetrated the conduct alleged in the Complaint would
rise to the level of a violation of Plaintiff's constitutional
rights cognizable under 42 U.S.C. § 1983.  If such an amendment
might state a claim, it will be permitted and this dismissal
would be without prejudice; otherwise, this dismissal would be
with prejudice as to such claims as cannot be cured by amendment.

**B.   CELLS WITHOUT RUNNING WATER, LACK OF RECREATIONAL HOUR**

Here, Plaintiff's Complaint alleges that – on two days (once
in March, and once in April of 2010) – Plaintiff was placed,
seemingly in connection with his disciplinary infractions, in

certain cells that had no running water and, in addition, was denied an opportunity to have "one hour of recreation." Plaintiff opines that such conditions of his confinement violated his constitutional rights.  Plaintiff errs.

Since "the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner," Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) (citation omitted), this Court will examine the allegations under the standard set forth in Bell v. Wolfish, 441 U.S. 520 (1979), i.e., whether the conditions of confinement amounted to punishment prior to an adjudication of guilt.  See Bell, 441 U.S. at 535 (the Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law); Hubbard, 399 F.3d at 166 (same).  As the Supreme Court explained,

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal -- if it is arbitrary or purposeless -- a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell, 441 U.S. at 539 (footnote and citation omitted).

The maintenance of security, internal order, and discipline are essential goals which at times require "limitation or retraction of . . . retained constitutional rights."  Id. at 546.

8

"Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  Id. at 540.  "In assessing whether the conditions are reasonably related to the assigned purposes, [a court] must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time[: since, if so,] the adverse conditions [might] become excessive in relation to the purposes assigned to them."  Hubbard, 399 F.3d at 159 (quoting Union County Jail Inmates v. DiBuono, 713 F.2d 984, 992 (3d Cir. 1983)); accord Wilson v. Seiter, 501 U.S. 294, 298 (1991) (same as under the Eighth Amendment, the objective component of the Fourteenth Amendment inquiry looks into whether "the deprivation [was] sufficiently serious," while the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind"); Hutto v. Finney, 437 U.S. 678, 686-87 (1978) (emphasizing that "the length of confinement [in unfavorable conditions] cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy, overcrowded cell . . . might be tolerable for a few days [but not] for weeks or months").

Here, Plaintiff asserts a deprivation in the form of being placed, on two different days, in cells that had no running water.  He does not assert that he was denied access to running water in public bathrooms, e.g., for hand and face washing, or access to showers, or that he was denied drinking water or toilet facilities.  All he asserts is that the amenities in the cells where he had to spend these two non-consecutive days were not up to par.  However, Plaintiff's temporary dissatisfaction cannot provide a basis for a constitutional claim and, therefore, his disappointment with two separate days of lack of running water in his cell cannot, as a matter of law, amount to a deprivation of constitutional magnitude.  See, e.g., Cary v. Rose, 902 F.2d 37 (7th Cir. 1990) (pretrial detainee's conditions that included frequent interruptions in running water did not violate the detainee's due process rights); Jackson v. Kane County, 2010 U.S. Dist. LEXIS 6154, at *7 (N.D. Ill. Jan. 26, 2010) ("Drawing on judicial experience and common sense, Iqbal, 129 S. Ct. at 1950, the court finds that a lack of running water in a particular prison cell block, though uncomfortable by itself, is not a serious deprivation of a basic human need"); Davis v. Lancaster County, 2007 U.S. Dist. LEXIS 69066, at *19-20 (D. Neb. Sept. 17, 2007) (dismissing detainee's claims based on the fact that the cell where he was placed for twenty-four hours lacked running water, even though the entirety of the conditions made it

10

impossible for that detainee to wash his body, even including his hands before eating and, in addition, required him to use a toilet "hole" in the floor rather than a toilet that flushed with water); cf. Rivera v. Walker, 2008 U.S. Dist. LEXIS 88787, at *14 (S.D. Ill. June 9, 2008) (applying Eighth Amendment analysis to conclude that, since "the lack of running water was a temporary condition [because] Plaintiff was placed in [the cell without running water in] August . . . and . . . transferred [out of that cell in] October . . . , about six weeks later, [this time line leads the court to conclude that,] although the situation was not desirable, the lack of running water in his cell for about six weeks . . . did not violate plaintiff's rights"). Since Plaintiff's allegations as to lack of running water in his cell during two non-consecutive days cannot amount to a cognizable claim, these allegations will be dismissed with prejudice.

Plaintiff's allegations based on his inability to have a daily hour of "recreation" fare no better. The Court of Appeals explained that the inquiry into whether given conditions constitute "punishment" must be made in light of the totality of circumstances within an institution. See Hubbard, 399 F.3d at 160-61; Hubbard v. Taylor, 538 F.3d 229, 233-34 (3d Cir. 2008) (finding claims based on overcrowding insufficient where the "lack of space in individual cells is alleviated by the availability of large common areas, or 'dayrooms,' [especially in

light of the fact that] each dayroom contains a sink, tables, chairs, and a television, and inmates are generally free to leave their cells and access the dayroom between the hours of 8:30 a.m. and 10:30 p.m."). Therefore, to show a deprivation amounting to a punishment imposed in violation of due process, the inmate asserting insufficient recreation must state facts showing denial of recreation was such that it caused injury to the inmate's ability to control his/her muscular functions or maintain his/her range of physical motions. See Cary, 902 F.2d 37 (where detainees alleged that they were denied adequate exercise and recreation but admitted that they had room in their cells and in the hallway to run in place or perform calisthenics, their allegations could not amount to a constitutional claim because, unless extreme and prolonged, lack of exercise could not be equated to a medically-threatening situation); see also Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. Ill. 1996) (affirming dismissal of detainee's claims because "[l]ack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened"); Ellis v. Crowe, 2009 U.S. Dist. LEXIS 125154, at *36 (E.D. La. Dec. 18, 2009) (detainee's claim should be dismissed if the facts he alleges do not show that he was so deprived of recreation for a significant time period to suffer a physical injury, such as muscle atrophy or

loss of range of motion, as a result of the alleged limitations on exercise).

Since, here, Plaintiff does not allege any physical injury and merely bases his claims on his erroneous conclusion that he should have been constitutionally entitled to an hour of recreation per day, his allegations will be dismissed.  Such dismissal, however, will be without prejudice, and Plaintiff will be allowed an opportunity to file an amended pleading: (a) clarifying the exact period of time during which the alleged denial of recreation took place; (b) detailing the exact conditions of Plaintiff's confinement by defining those conditions that prevented any physical activity, as well as those conditions that allowed some physical activity (such as place to run in place or perform calisthenics); (c) explaining the nature of the physical injury Plaintiff suffered as a result of the alleged denial of recreation; and (d) naming the particular defendant whose actions caused Plaintiff's confinement without ability to exercise.

**C.    REQUEST TO FILE CRIMINAL COMPLAINT AGAINST O'CRUZ**

Plaintiff's allegations that his requests to file criminal complaint against O'Cruz were unduly denied by "the Internal Affairs" will similarly be dismissed because Plaintiff, being a private citizen, may informally transmit his accusation about some individual's engagement in criminal activity (e.g., by means

13

of a letter addressed to law enforcement authorities), but he cannot file a complaint instigating criminal proceedings.

A private plaintiff cannot force a criminal prosecution because the "authority to initiate a criminal complaint rests exclusively with state and federal prosecutors." See Collyer v. Darling, 98 F.3d 211, 222 (6th Cir. 1996); Mercer v. Lexington Fayette Urban County Gov't., 52 F.3d 325 (6th Cir. 1995); Forney v. Woodridge Hosp. & Johnson City Med. Ctr., 2005 U.S. Dist. LEXIS 37257, at *6 (E.D. Tenn. Sept. 14, 2005);  see also Savage v. Arnold, 403 F. Supp. 172 (E.D. Pa. 1975) (stating that a private party cannot, on his own, commence a criminal proceeding for failure to meet to comply with the requirements of Rules 3 and 4 of the Rules of Criminal Procedure and citing United States v. Blierley, 331 F. Supp. 1182 (W.D. Pa. 1971); Brown v. Duggan, 329 F. Supp. 207 (W.D. Pa. 1971); Spader v. Wilentz, 25 F.R.D. 492 (D.N.J.), aff'd, 280 F.2d 422 (3d Cir.), cert. denied 364 U.S. 875 (1960)).

Since Plaintiff, a private citizen, is without authority to file criminal charges, see United States v. Jarvis, 560 F.2d 494, 497 (2d Cir. 1977), his allegations that he was unduly denied an opportunity to file a criminal complaint against O'Cruz is facially without merit and will be dismissed with prejudice.

D.    **LEGAL PHONE CALLS**

Here, Plaintiff asserts that he was deprived of an opportunity to *receive* legal phone calls.  See Docket Entry No. 2, at 8.  This allegation suggests that a certain person was trying to call Plaintiff in jail to discuss something "legal," but Plaintiff was not called to the phone.  If so, Plaintiff's claims are facially without merit and should be dismissed.

However, construing Plaintiff's allegations in light most favorable to Plaintiff, the Court presumes –– for the purposes of this Opinion only –– that Plaintiff attempted to allege that he was denied an opportunity to *place* phone calls, and that these phone calls were the calls to his legal counsel representing him in an ongoing legal matter (e.g., in Plaintiff's criminal prosecution) or to an organization providing legal assistance to inmates.  So construed, Plaintiff's allegations suggest an access-to-the-courts claim.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).[2]

_____

[2]  In addition, the constitutional guarantee of due process of law has, as a corollary, the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  See Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also Peterkin v. Jeffes, 855 F.2d

Addressing the issue of inmates' right of access to the courts, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers." Bounds v. Smith, 430 U.S. 817, 828 (1977).  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis removed).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue a viable claim or defense directly or collaterally related to his criminal prosecution or his conditions of their confinement.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997); see also Salkeld v. Tennis, 248 Fed. App'x 341, 342 (3d Cir. 2007) (the injury requirement is not

---

1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

satisfied by just any type of frustrated legal claim).   "He
might show, for example, that a complaint he prepared was
dismissed for failure to satisfy some technical requirement . . .
. Or that he had suffered arguably actionable harm that he
wished to bring before the courts, but was so stymied by
inadequacies of [his conditions of confinement] that he was
unable to file even a complaint."  Lewis, 518 U.S. at 351.

Consequently, in Christopher v. Harbury, 536 U.S. 403
(2002), the Supreme Court set forth specific criteria that a
court must consider in determining whether a plaintiff has
alleged a viable claim.  The Supreme Court guided that, in order
to state a claim for denial of access to courts, the inmate must
assert fact showing each of the following three elements: (1) a
non-frivolous, underlying legal claim that the inmate was
pursuing in connection with his criminal prosecution or his
conditions of confinement; (2) the official acts successfully
frustrating that particular litigation in the sense that (3) an
actual loss of claim or defense resulted from such frustrative
actions hence giving a basis to grant remedy that may be awarded
as recompense but that is not otherwise available in the
frustrated suit.  See id. at 415.

Here, Plaintiff's allegations do not meet the Christopher
criteria.  He makes no statement in the Complaint to show that he
sought to make these legal calls in connection with his criminal

prosecution or in connection with his challenges to conditions of his confinement. Similarly, no statement made in the Complaint indicates that Plaintiff's inability to place such legal phone calls actually resulted in a loss of claim or defense with regard to Plaintiff's criminal prosecution or his prior conditions-of-confinement challenges.[3]  Therefore, Plaintiff's allegation will be dismissed. Such dismissal, however, will be without prejudice, and Plaintiff will be allowed an opportunity to cure his pleadings by clarifying, in his amended complaint: (a) whom Plaintiff was trying to reach by means of the legal phone calls that Plaintiff requested (and, in addition, explaining whether Plaintiff was availed to alternative means of communication with that person, such as via in-person meetings or by mail); (b) clarifying the nature of the legal matter(s) with regard to which he was seeking to place such phone calls; (c) explaining the nature of the exact claim(s) or defense(s) which Plaintiff forfeited as a result of the alleged denial of his requests to place legal phone calls; and (d) naming the particular defendant who denied Plaintiff's these requests to place these legal calls.

**E.   RETALIATION**

-----

[3]  Since, in the instant matter, Plaintiff's allegations are dismissed either: (a) without prejudice; or (b) with prejudice on the grounds that the facts articulated by Plaintiff could not, as a matter of law, amount to a claim upon which relief can be granted, Plaintiff's prosecution of the instant action cannot serve as a basis for Plaintiff's right of access claim.

Finally, Plaintiff asserts that he was retaliated (by being transferred from cell to cell with excessive frequency) for complaining to unspecified jail officials about his dissatisfaction with lack of running water, his desire for one hour of "recreation," his inability to file a criminal complaint against O'Cruz and his inability to place legal calls.[4]

"Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-25 (3d Cir. 2000); <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003).  In order to state a prima facie case of retaliation, a prisoner must assert facts demonstrating that: (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the prison officials'

---

[4]  Although Plaintiff's exhibits, <u>see</u> Docket Entry No. 2, suggest that Plaintiff's administrative complaints to jail officials were limited to Plaintiff's expression of his desire to file a criminal complaint against O'Cruz and to receive unspecified legal calls, the Court presumes – for the purposes of this Opinion only – that Plaintiff's use of the phrase "all these issues" (<u>see</u> Docket Entry No. 1, at 5, utilizing the phrase for the purposes of Plaintiff's allegations that he was retaliated for complaining about "all these issues") was intended to operate as an assertion that he was retaliated in response to his filing of grievances about lack of running water and about limitations on "recreation," not just for the grievances about his inability to file a criminal complaint or to "receive" legal phone calls.

decision to impose such adverse action.  See Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).  Moreover, to show an "adverse action," the inmate must assert facts demonstrating that defendants' actions were of such nature that they were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  Allah, 229 F.3d at 225.

Here, Plaintiff's filing of grievances qualifies as protected activity within the meaning of the First Amendment (regardless of whether or not the jail officials' denial of accommodations that Plaintiff sought could amount to a constitutional violation).  Moreover, it is possible that Plaintiff's transfer from cell to cell was conducted with such excessive frequency that the cumulative of these transfers amounted to an adverse action.[5]  Cf. Scher v. Engelke, 943 F.2d 921 (8th Cir. 1991), cert. denied, 503 U.S. 952 (1992) (finding harassment where prisoner's cell was searched ten times in nineteen days, i.e., more frequently than on bi-daily basis); but see Proudfoot v. Williams, 803 F. Supp. 1048 (E.D. Pa. 1992)

---

[5]  Inmates have no Due Process liberty interest in being assigned to a particular correctional institution, moreover to a particular prison cell.  Accord Wilkinson v. Austin, 545 U.S. 209 (2005) (the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); see also Walker v. Hughes, 558 F.2d 1247, 1252 (6th Cir. 1977) ("law . . . does not restrict the authority of prison officials over the inmates as to placement in [different locales]").

(three searches within fourteen days did not amount to a constitutional violation when each search was made for a legitimate purpose).  Finally, it is possible that Plaintiff might detail such time-line of events that it would suggest a substantial connection between Plaintiff's filings of grievances and his transfers from cell to cell.

Therefore, same as Plaintiff's allegations asserting denial of recreation and denial of legal phone calls, Plaintiff's retaliation claim will be dismissed without prejudice, and Plaintiff will be allowed an opportunity to file an amended complaint: (a) detailing the time-line of his submission of administrative grievances which Plaintiff bona fide believes triggered retaliatory actions; (b) specifying both the time-line and frequency of those Plaintiff's transfers from cell to cell that Plaintiff bona fide believes were directed as a retaliatory measure (i.e., without relation to Plaintiff's disciplinary proceedings and without connection to the jail's housing needs known to Plaintiff); and (c) naming the defendant who directed such (unrelated to jail housing needs and legitimate disciplinary purposes) transfers from cell to cell upon learning about Plaintiff's filings of administrative grievances.

## V.  CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's application to file the Complaint without prepayment of the

filing fee and will dismiss the Complaint.  Such dismissal will be with prejudice with regard to Defendant Cumberland County Jail, and also with regard to Plaintiff's claims asserting: (1) undue denial of his request to file a criminal complaint; and (2) violation of his due process rights by placing him on two days in cells without running water.  Plaintiff's remaining claims (asserting: (1) undue denial of recreation; (2) denial of legal phone calls; and (3) retaliatory actions by jail officials) will be dismissed without prejudice, and Plaintiff will be granted leave to amend his claims to that effect in accordance with the guidance provided to him in this Opinion.

An appropriate Order accompanies this Opinion.

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge

Dated: **September 23, 2010**

22